UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANTE C. PAPPION, <br><br>           Plaintiff, <br><br>      v. <br><br> R-RANCH PROPERTY OWNERS ASSOCIATION, a California Non-Profit Corporation; HAL GLOVER; MARK GRENBEMER; JOHN CROSBY; RON BUCHER; MARK PERRY; MICHAEL HORNE; RICK WEVER; and Does 1–10, <br><br>           Defendants. | No.  2:13-cv-01146-TLN-CMK <br><br> **ORDER** |

      Plaintiff Chante C. Pappion ("Plaintiff") is a wheelchair-bound partial owner at the R-Ranch recreational facility in Siskiyou County.  Plaintiff filed the instant action against Defendants R-Ranch Property Owners Association ("POA"), a California Non-Profit Corporation, as well as individual members of the POA Board, Hal Glover, Mark Grenbemer, John Crosby, Rob Bucher, Mark Perry, Michael Horne, and Rick Wever (collectively "Defendants") under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 and California state law, including the Unruh Act, Cal. Civ. Code § 51–53, and the California Disabled Persons Act, Cal. Civ. Code § 54–54.8.  Plaintiff's Complaint alleges that she has been denied full and equal access to the R-Ranch facilities.  The parties' have filed cross-motions for

summary judgment. For the reasons set forth below, Plaintiff's Partial Motion for Summary Judgment (ECF No. 23-1) is DENIED and Defendants' Motion for Summary Judgment (ECF No. 24-1) is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND

Plaintiff initiated this case on June 7, 2013, to challenge Defendants' alleged violations of the ADA, the Unruh Civil Rights Act, and the California Disabled Persons Act. (Compl., ECF No. 1.) In her Complaint, Plaintiff specifically states that Defendants operate a place of public accommodation and violated the ADA by failing to remove architectural barriers. (ECF No. 1 at ¶¶ 21, 23.)

R-Ranch is a five-thousand acre recreational property owned by approximately 1700 individual owners. (ECF No. 1 at ¶ 2, 4; Boudek Decl., ECF No. 24-3 at ¶¶ 2–3.) Each owner has an undivided interest ("Share") in the real property which they can access using owner key-cards and identification cards. (Defs.' Statement of Undisputed Facts ("SUF"), ECF No. 24-2 at ¶ 24; ECF No. 24-3 at ¶ 4.) The R-Ranch POA is controlled by seven elected owners (the "Board") who are tasked with operating and maintaining the premises. (ECF No. 24-2 at ¶ 10.)

The R-Ranch facility encompasses a central building referred to as "Ranch Headquarters." (Pl.'s SUF, ECF No. 23-2 at ¶ 3; ECF No. 24-2 at ¶ 15.) Ranch Headquarters serves as the principal office of Defendants and is typically staffed by at least one employee. (ECF No. 23-2 at ¶ 5; 24-2 at ¶ 17.) Ranch Headquarters is used to store official documents including employee personnel files, financial documents, owner files, contracts, election materials, and other POA records. (ECF No. 24-2 at ¶ 18.) R-Ranch owners utilize Ranch Headquarters for regular owner business such as paying assessments, paying fines, paying fees, or copying records. (ECF No. 23-2 at ¶ 10; ECF No. 24-2 at ¶ 19.)

R-Ranch financially operates largely as a result of the revenue collected from owner-based assessments and fees. (ECF No. 24-2 at ¶ 25.) When an owner neglects to pay their assessment, Defendant R-Ranch POA is authorized to either foreclose on the real property interest or accept a deed-in-lieu of foreclosure from the owner. (ECF No. 24-2 at ¶ 27.) As a result of foreclosures in recent years, Defendant R-Ranch POA has acquired ownership of

2

approximately 455 R-Ranch Shares.  (ECF No. 24-2 at ¶ 28.)

Defendants have attempted to sell the remaining shares of R-Ranch by occasionally attending tradeshows and inviting potential buyers to register as guests and tour the R-Ranch property.  (ECF No. 23-2 at ¶¶ 6, 8; ECF No. 24-2 at ¶¶ 30–31.)  Defendants use Ranch Headquarters to conduct business and real estate transactions with registered guests who are interested in purchasing Shares.  (ECF No. 23-2 at ¶ 9.)

Plaintiff purchased a 1/2500 Share in R-Ranch in 2007.  (ECF No. 23-2 at ¶ 2; ECF No. 24-2 at ¶¶ 4–5.)  She routinely visits Ranch Headquarters to conduct owner business such as paying assessments, paying bills, registering guests, and purchasing souvenirs.  (ECF No. 23-2 at ¶ 10; ECF No. 24-2 at ¶ 34.)  Plaintiff is disabled within the meaning of the Americans with Disabilities Act ("ADA").[1]  (Defs.' Answer Compl. ECF No. 12 at ¶ 1; ECF No. 23-2 at ¶ 1.)

There are no handicap parking spaces at Ranch Headquarters.  (ECF No. 12 at ¶ 9; ECF No. 23-2 at ¶¶ 11–12.)   Further, the path of travel from the parking area to the restroom facility located near Ranch Headquarters requires navigating over at least one un-ramped step.  (ECF No. 12 at ¶ 12; ECF No. 23-2 at ¶ 16.)

The present dispute stems from Plaintiff's allegations that Defendant R-Ranch POA fails to comply with the ADA guidelines and has denied Plaintiff full and equal access to the R-Ranch premises. On November 20, 2014, Plaintiff filed a Motion for Partial Summary Judgment asking the Court to enter partial summary judgment against Defendants as to her ADA cause of action. (Mot. For Partial Summ. J., ECF No. 23-1 at 5.)

On November 20, 2014, Defendants filed a Motion for Summary Judgment requesting that the Court enter summary judgment against Plaintiff.  (ECF No. 24.)  Defendants argue in their Motion as follows: (1) Ranch Headquarters is a private establishment and not a place of public accommodation; (2) Pappion is not an individual with respect to her use of Ranch Headquarters; and (3) Pappion does not have standing under federal or California law.  (ECF No. 24 at 2.)

//

---

[1] Plaintiff is significantly impaired in her ability to walk and uses a wheelchair for mobility.  (ECF No. 1 at ¶ 1.)

3

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–289, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not

4

establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

III. ANALYSIS

Plaintiff sues under Title III of the ADA which prohibits "discriminat[ion] . . . on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). To prevail on her claim, Plaintiff must prove each of the following: (1) that she is disabled within the meaning of the ADA; (2) that Defendants are a private entity that own, lease, or operate a place of public accommodation; and (3) that Plaintiff was denied public accommodations by Defendants because of her disability. 42 U.S.C. § 12182(a); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); *Hubbard v. Twin Oaks Health & Rehab. Ctr.*, 408 F. Supp. 2d 923, 929 (E.D. Cal. 2004). If Plaintiff cannot prove one of the requirements, her ADA claim fails. *See*

*Feezor v. Excel Stockton, LLC*, 2013 U.S. Dist. LEXIS 81452, at *14 (E.D. Cal. June 7, 2013) (denying plaintiff's motion for summary judgment solely on the basis of the third element); *Hernandez v. Polanco Enters.*, 19 F. Supp. 3d 918, 930 (N.D. Cal. 2013) (same). In addition, to succeed on an ADA claim of discrimination on account of an architectural barrier, Plaintiff must prove that (1) the existing facility at the Defendants' place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable. *See* 42 U.S.C. § 12182(b)(2)(A)(iv); *Hubbard*, 408 F. Supp. 2d at 929.

Plaintiff alleges that she was denied the full and equal enjoyment of Ranch Headquarters, the restroom, and the parking lot serving Ranch Headquarters. The parties agree that Plaintiff is disabled within the meaning of the ADA. Defendants, however, contend that Plaintiff is unable to prove (1) that Ranch Headquarters is a place of public accommodation, and (2) that she is an individual within the meaning of the ADA.[2] (ECF No. 24-1 at 10.) Because the Court finds that R-Ranch is not a place of public accommodation, the Court need not address Defendants' argument concerning whether Plaintiff is an individual within the meaning of the ADA.

**A. Ranch Headquarters is not a place of public accommodation**

The ADA prohibits discrimination on the basis of disability in "any place of public accommodation." *See* 42 U.S.C. § 12182(a). Defendants assert that Ranch Headquarters is a private facility and not a place of public accommodation covered by Title III. (ECF No. 24-1 at ¶¶ 10–15.) Conversely, Plaintiff argues that "[b]ecause property sales with the public take place at the [Ranch] Headquarters, it falls under the ADA's definition of a sales establishment . . . [and] is a public accommodation under the ADA . . . ." (ECF No. 23-1 at 11.) "Whether a particular facility is a 'public accommodation' under the ADA is a question of law." *Jankey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 2d 1174, 1178 (C.D. Cal. 1998), *aff'd*, 212 F. 3d 1159 (9th Cir. 2000).

---

[2] The ADA defines "'individuals' as 'the clients or customers of the covered public accommodation.'" 42 U.S.C. § 12182(b)(1)(A)(iv); *Kalani v. Castle Vill. LLC,* 2014 WL 1490055 (E.D. Cal. Apr. 15, 2014). The term "clients or customers," under Title III refers to "clients or customers of the covered public accommodation that enters into [a] contractual, licensing or other arrangement." 42 U.S.C. § 12182(b)(1)(A)(iv); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 116 (3d Cir. 1998) (emphasis added). Defendants argue that because the Ranch is not a place of public accommodation, that Plaintiff cannot be considered a client or customer of a covered public accommodation.

1   "The determination of whether a facility is a 'public accommodation' turns on whether the
2   facility is open 'indiscriminately to other members of the general public.'"[3] *D'Lil v. Stardust*
3   *Vacation Club*, 2001 U.S. Dist. LEXIS 23309, at *12–13 (E.D. Cal. Dec. 20, 2001) (quoting
4   *Jankey*, 14 F. Supp. 2d at 1178); *see also Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp.
5   698, 758–60 (D. Or. 1997) (executive suites in sporting arena licensed to public on a first-come,
6   first-served basis were not exempt from ADA). "Many facilities that are classified as public
7   accommodations are open only to specific invitees." *Indep. Living Res.*, 982 F. Supp. at 759. For
8   instance,

> a facility that specializes in hosting wedding receptions and private parties may be open only to invitees of the bride and groom, yet it clearly qualifies as a public accommodation. Attendance at a political convention is strictly controlled, yet the convention center is still a place of public accommodation. A gymnasium or golf course may be open only to authorized members and their guests, but that does not necessarily preclude it from being classified as a place of public accommodation. A private school may be open only to enrolled students, but it is still a place of public accommodation.

15  *Id.* (internal citations omitted); *compare with EEOC v. Chicago Club*, 86 F.3d 1423, 1436 (7th
16  Cir. 1996) (holding that when a private club limits guest use of the facility it maintains private
17  establishment status); *Jankey*, 14 F. Supp. 2d 1174 at 1183 (holding that an establishment that
18  limits its facilities and services to employees and their guests is not a place of public
19  accommodation).
20  To determine whether R-Ranch is a place of public accommodation open only to specific
21  invitees or a private facility exempt from the ADA, the Court analyzes the facility under the four
22  factors detailed in *Jankey v. Twentieth Century Fox Film Corp*. 14 F. Supp. 2d at 1178. In
23  *Jankey*, the court explained that "occasional use of an exempt commercial or private facility by
24  the general public is not sufficient to convert that facility into a public accommodation under the

---

[3] Title III provides a list of private entities which are considered 'public accommodations' that includes in part: an auditorium, convention center, lecture hall or other place of public gathering; a gymnasium, health spa, bowling alley, golf course, or other *place of exercise or recreation*; a bakery, grocery store, clothing store, hardware store, shopping center, or *other sales or rental establishment*; and a park, zoo, amusement park, or *other place of recreation*. 42 U.S.C. § 12181(7); 28 C.F.R. § 36.104 (implementing regulations); *Kalani v. Castle Vill. LLC*, 14 F. Supp. 3d 1359, 1370 (E.D. Cal. 2014).

7

ADA." *Id.* The court then listed several factors to consider in determining whether a facility is genuinely private and therefore exempt: (1) the use of facilities by nonmembers; (2) the purpose of the facility's existence; (3) advertisement to the public; and (4) profit or non-profit status. *Id.* at 1179 (citing *U.S. v. Landsdowne Swim Club*, 713 F. Supp. 785, 796–97 (E.D. Pa. 1989), *aff'd*, 894 F. 2d 83 (3rd Cir. 1990)). The Court addresses each factor in turn.

   *i. The use of facilities by nonmembers*

Under the first factor, the Court may consider the extent to which R-Ranch limits its facilities to owners and their guests. *See Jankey*, 14 F. Supp. 2d at 1178 (citing *Kelsey v. Univ. Club*, 845 F. Supp. 1526, 1529 (M.D. Fla. 1994)). Facilities "intended for or restricted to the use of a particular person or group or class of persons not freely available to the public" are private and exempt from the ADA.[4] *Chicago Club*, 86 F. 3d at 1435. While regular use of the facility by nonmembers contradicts private status, allowing owners to bring guests onto the property does not strip Defendants of their ADA exemption as a private establishment. *Jankey*, 14 F. Supp. 2d at 1178 ("[a] private club with a 'limited guest policy,' in which guests are not permitted 'unfettered use of facilities,' is not a public accommodation for purposes of the ADA") (citing *Kelsey*, 845 F. Supp. at 1530). Courts have found that establishments that allow guests 'unfettered' use of their facilities are not private. *See Bennett v. Tupelo Country Club*, 2006 U.S. Dist. LEXIS 1624, at *6 (N.D. Miss. Jan. 5, 2006) (finding that the Tupelo Country Club was not private because they allowed non-members to use the Club in a similar capacity to members); *EEOC v. University Club of Chicago*, 763 F. Supp. 985, 987–88 (N.D. Ill. 1991) (holding that the University Club of Chicago was not private because non-members were allowed essentially the same privileges as members regardless of whether or not the guest is accompanied by a member).

Here, the plain language of the R-Ranch Covenants, Conditions and Restrictions ("CC&Rs") of the R-Ranch POA prohibits "any public use" of the facility. (R-Ranch CC&Rs, ECF No. 24-5 at 17.) R-Ranch and Ranch Headquarters are limited to use by owners and owners' guests. Furthermore, guests entering R-Ranch are not allowed unrestricted use of the facility.

---

[4] The case law interpretation of whether a place is a "public accommodation" under Title III is analogous to the interpretation of "public accommodation" under Title II. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681 (2001).

1  The R-Ranch Owners Information Book outlines that owners must supervise their guests at all
2  times and take responsibility for their actions. (R-Ranch Owners Information Book, ECF No. 24-
3  7 at 4, 7.) Each owner has 210 over-night stays available to them each year, whereas each guest
4  is limited to 30 over-night stays each year. (ECF No. 24-7 at 5, 7.)

5        The POA occasionally invites potential buyers to tour the property in an attempt to sell
6  POA-owned property Shares. The potential buyers are registered as guests and given the option
7  to stay on the property for the same fee that guests would pay. Each potential owner invited to
8  the property may stay on the property for up to two-nights and must wear a wristband displaying
9  their guest status. (ECF No. 24-2 at ¶ 32; ECF No. 24-7 at 8.) In 2014, owner generated revenue
10 totaled approximately $1,400,000, whereas owner guest revenues totaled approximately $42,000.
11 (ECF No. 24-2 at ¶¶ 25–26.)

12       As to Ranch Headquarters, the primary purpose of the building is to serve as a central
13 space where owners can conduct R-Ranch Business. Even though the POA invites registered
14 guests to Ranch Headquarters to discuss offers of Share sales, the facts indicate that the
15 overwhelming use of Ranch Headquarters is for POA and owner business. Even viewing the
16 evidence in a light most favorable to Plaintiff, the Court finds that Defendants regularly restrict
17 facility use to owners and owners' guests. Thus, the limited extent to which Defendants allow
18 non-owners to use its facilities weighs in favor of R-Ranch being a private facility exempt from
19 the ADA.

20       *ii. Purpose of the facility's existence*

21       Defendants argue that the purpose of Ranch Headquarters is to facilitate ranch business.
22 (ECF No. 24-1 at 14.) Plaintiff contends that because Defendants conduct real estate transactions
23 at Ranch Headquarters, Ranch Headquarters is a sales and rental office. (ECF 23-1 at 11; ECF
24 No. 23-2 at ¶¶ 6, 9.)

25       The R-Ranch CC&Rs expressly state that the facility's purpose is purely recreation, and
26 "[n]o business or commercial activities of any kind whatsoever shall be conducted within the R-
27 Ranch Properties . . . ." (ECF No. 24-5 at 12.) Further, Ranch Headquarters is run by the POA
28 which has "attributes of self-government and member-ownership traditionally associated with

9

private clubs." *Lansdowne Swim Club*, 713 F. Supp. at 796 (*Daniel v. Paul*, 395 U.S. 298, 301 (1969)). Ranch Headquarters is the operational center where all R-Ranch business is conducted. It has not held itself out as a sales office, and the Court notes that there is no indication from Plaintiff's photographic evidence that Ranch Headquarters could even be inferred to be sales office from the outside. (ECF No. 23-7.) The sales transactions that occur at Ranch Headquarters are ancillary to the principal purpose of Ranch Headquarters, which is to serve as a recreational property maintained for the benefit of R-Ranch owners.

It is undisputed that any individual interested in purchasing a Share enters Ranch Headquarters as a registered guest. Plaintiff has not alleged facts that Ranch Headquarters is open to the public or engages in public commerce beyond allowing invited guests to register and discuss the sale of Shares. Thus, this factor weighs in favor of Defendants' contention that R-Ranch is a private establishment exempt from the ADA.

### iii. Advertisement to the public

Courts have held that advertising designed to invite the public to patronize or increase the patronage of an entity's facility is typically inconsistent with private exempt status. *Martin v. PGA Tour, Inc.*, 984 F. Supp. 1320, 1325 (D. Or. 1998) (finding that organizations which advertise and solicit new members do not fall within the private club exemption); *Wright v. Cork Club*, 315 F. Supp. 1143, 1152 (S.D. Tex. 1970). However, "[p]rudently increasing membership to increase revenue while not abandoning selective membership practices exhibits nothing more than fiscal responsibility." *EEOC v. Chicago Club*, 86 F.3d 1423, 1435 (7th Cir. 1996).

Plaintiff contends that Defendants advertise the sale of ownership interests on its website and at trade shows. (ECF No. 23-1 at 11; ECF No. 23-2 at ¶ 7.) Defendants argue that selectively attempting to sell private interests in R-Ranch does not amount to advertising to the public. (ECF No. 24-1 at 14–15.)

It is undisputed that Defendants attempt to sell R-Ranch Shares to private individuals. On its website, the POA provides information on how to register as a guest and learn more about the property. Additionally, it is undisputed that the POA for the first time in 2014 attended "a couple [of] outdoor shows and recreational shows" in an attempt to sell R-Ranch Shares. (ECF No. 23-

11 at 7.) At these tradeshows, the POA selectively invites registered guests to tour the property. Plaintiff even concedes that members of the public interested in purchasing Shares must be invited to Ranch Headquarters to purchase the Shares, furthering the notion that Defendants exhibit selective membership practices. (ECF No. 23-2 at ¶ 8.) Plaintiff has not alleged any facts supporting the position that Defendants advertise to the general public beyond selectively attempting to increase membership. This factor does not weigh in favor of Ranch Headquarters being a place of public accommodation and is, at most, neutral towards Plaintiff's claim.

### *iv. Profit or non-profit status*

In weighing the purpose of the facility, courts may consider whether the purpose of the facility is for nonprofit purposes, which indicates private exempt status. *Jankey*, 12 F. Supp. 2d 1174 at 1182. It is undisputed that R-Ranch is a non-profit corporation as defined under federal and California law. 26 U.S.C. § 501(c)(7); Cal. Corp. Code § 7110 *et seq.* Plaintiff has not provided any evidence that R-Ranch is a commercial entity and not a non-profit corporation. Thus, the Court finds that this element weighs in favor of Defendants private status and exemption from the ADA.

In sum, the aforementioned facts favor a finding R-Ranch is an exempt facility. Defendants have shown that the primary purpose of R-Ranch and Ranch Headquarters is to serve as a recreational facility for R-Ranch owners. Thus, R-Ranch is not a place of public accommodation. Plaintiff cannot maintain a cause of action under Title III of the ADA. Thus, on this basis, Plaintiff's Motion for Partial Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED only as to Plaintiff's ADA claim.

**B. State Law Claims**

After the dismissal of Plaintiff's ADA claim, only her state law claims remain pending. The Court, therefore, may sua sponte decide whether to continue exercising supplemental jurisdiction. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en banc). Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a [state law] claim" if "the district court has dismissed all claims over which it has original jurisdiction . . . ." "The decision to decline supplemental jurisdiction under 28 U.S.C. §

1367(c)(3) should be informed by the values of economy, convenience, fairness and comity as delineated by the Supreme Court in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1996)." *Yuhre v. JP Morgan Chase Bank*, 2010 U.S. Dist. LEXIS 44948, at \*21 (E.D. Cal. Apr. 6, 2010). "Since state courts have the primary responsibility for developing and applying state law, the *Gibbs* values do not favor retaining jurisdiction in this case." *Yuhre*, 2010 U.S. Dist. LEXIS 44948, at \*22 (citing *Acri*, 114 F.3d at 1001). Further, "since this action originated in the federal court, this Court cannot remand this action to the state court." *Lopez v. Lassen Dairy, Inc.*, 2010 U.S. Dist. LEXIS 125172, at \*6 (E.D. Cal. Nov. 12, 2010). Therefore, the Court declines to continue exercising supplemental jurisdiction over Plaintiff's remaining state law claims and they are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

### IV. CONCLUSION

Defendants move for Summary Judgment on all claims. Plaintiff moves for Partial Summary Judgment on her ADA claim. The Court finds that R-Ranch is a private facility exempt from the ADA. Thus, Plaintiff's Motion for Partial Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED only as to Plaintiff's ADA claim.

Since all federal claims have been resolved, the Court declines to exercise supplemental jurisdiction; the remaining state law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

Accordingly, IT IS HEREBY ORDERED that:

1. Summary judgment in favor of Defendants on Plaintiff's ADA Cause of Action is GRANTED;
2. Plaintiff's Partial Motion for Summary Judgment is DENIED; and
3. Plaintiff's remaining state law claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

//
//
//

IT IS SO ORDERED.

Dated: May 20, 2015

Troy L. Nunley
United States District Judge